```
            IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF TEXAS
                      DALLAS DIVISION

ASKE GIRMA,                       §
                                  §
            Plaintiff,            §
                                  § Civil Action No. 3:05-CV-0961-D
VS.                               §
                                  §
COMPASS BANK,                     §
                                  §
            Defendant.            §
```

## MEMORANDUM OPINION
## AND ORDER

In this removed action, plaintiff Aske Girma ("Girma") sues defendant Compass Bank ("Compass") for statutory fraud in connection with a real estate transaction, under Tex. Bus. & Com. Code Ann. § 27.01 (Vernon 2002), common law fraud, and breach of contract arising from his unsuccessful attempt to purchase a gas station and convenience store. Compass moves for summary judgment as to all claims. Concluding there are genuine issues of material fact concerning whether the parties entered into a contract for the sale of the property, but that there are no genuine issues of material fact as to the fraud claims and that Compass is entitled to judgment as a matter of law, the court grants in part and denies in part Compass's motion.

I

Compass and Girma entered into a contract on November 22, 2004 ("the first contract") under which Compass agreed to sell Girma a gas station and convenience store located in Mesquite, Texas for

$700,000.[1] Compass did not at the time have title to the property; rather, it was the lender on a secured loan. Because the loan was in default, Compass anticipated that it would foreclose. The first contract made Compass's obligation to sell the property to Girma contingent on Compass's obtaining title at a December 7, 2004 foreclosure sale and approval of the sale by Compass's Senior Loan Committee.

Dan V. Matise ("Matise") represented Compass in the contract negotiations as its broker. Hisham Awadelkariem ("Awadelkariem") represented Girma as his agent. During the negotiations, Matise assured Girma that the foreclosure "would be a formality," P. App. 1, that the outstanding amount due on the note was in excess of $1.7 million, that no one would bid that amount, and that the property therefore "'would be [Girma's],'" *id.* at 2.

Out of concern that the gas station and convenience store would lose its customer base after an extended period of closure, Girma asked that Compass give him a key to the property so that he could keep the utilities and security system on, prepare the property for a certificate of occupancy, and otherwise ready the property for opening after the purchase. Matise obtained a key for Girma.

---

[1]The court recounts the evidence favorably to Girma, as the summary judgment nonmovant, and draws all reasonable inferences in his favor. *See, e.g.*, *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000).

After Compass and Girma entered into the first contract, they learned of environmental concerns related to the property. Consequently, Compass postponed the sale. The property was not sold at the December 7, 2004 foreclosure sale, and Compass's Senior Loan Committee did not approve the sale to Girma.

Compass and Girma began additional negotiations, culminating in Matise's preparing a second contract ("the second contract") with a purchase price of $680,000. Similar to the conditions of the first contract, the second was contingent on Compass's acquiring title to the property at a March 1, 2005 foreclosure sale and on approval by Compass's Senior Loan Committee.

The parties dispute whether they entered into the second contract. Girma maintains that he signed the second contract on or about February 11, 2005 and that William R. Rosenberg ("Rosenberg"), a Compass Vice President, had already signed it. Compass avers that Matise prepared the second contract by making changes to the sale price of the first contract, changing the dates on the first contract's signature page, and attaching the first contract's executed signature page to the second contract, with the intent that both parties would initial each page of the second contract and its addendum. Compass contends that no employee, agent, or representative of Compass executed the second contract.

Compass did not acquire title to the property at the March 1, 2005 foreclosure sale; instead, a third party purchased the

property for $674,000.

Girma sued Compass in Texas state court, asserting state-law claims for fraud in connection with a real estate transaction under Tex. Bus. & Com. Code Ann. § 27.01, common law fraud, and breach of contract.[2]  Girma seeks compensatory and exemplary damages and attorney's fees.  Compass removed the case to this court based on diversity of citizenship, and it now seeks summary judgment on each of Girma's claims.

II

Compass moves for summary judgment on Girma's breach of contract claim, contending that no Compass employee, agent, or representative signed the second contract, and that it is not enforceable because its conditions precedent were not met.

A

Compass first maintains that it never entered into the contract because no employee, agent, or representative of Compass ever executed the agreement.  In support of its position, Compass relies on the affidavits of Matise and Rosenberg.

Matise avers that he prepared the second contract by starting with the first contract, changing the sale price to $680,000, and attaching the executed signature pages from the first contract to the second contract, with the intention of having both parties

---

[2]Girma's breach of contract claim appears to relate only to the second contract.  He does not seek to enforce the terms of the first contract.

initial each page of the second contract and the addendum. He states that he changed the dates on the signature page of the second contract to reflect a date of February 11, 2005 for Girma and an open February 2005 signing date for Compass. Matise states:

> To my knowledge, neither Compass nor Girma ever executed or initia[l]ed the [second contract], as revised. To my knowledge, the [second contract] was never sent to Chicago Title Company. . . .  In my capacity as broker for Compass, I never executed nor initia[l]ed the [second contract].
>
> . . . .
>
> Rosenberg never signed or initialed the [second contract] in my presence and never provided me a signed or initialed copy. Compass never agreed to the [second] contract attached to the Petition.

D. App. 21-22.

Rosenberg states in his affidavit that, although he did sign the first contract, he never signed the second. He avers that his signature from the first contract has been inserted into the second.

In his response brief, Girma does not explicitly respond to this ground. Nevertheless, for two reasons, there is a genuine fact issue concerning whether Rosenberg executed the second contract. First, Girma's evidence controverts Compass's proffered explanation for the presence of Rosenberg's signature on the second contract. Girma avers that he went to Matise's office and signed the second contract on or about February 11, 2005. Awadelkariem

- 5 -

states in his affidavit that he accompanied Girma, Girma signed the second contract, and Matise gave Girma a copy.  This testimony controverts Compass's explanation because, if the first contract's signature page was merely appended to the second contract with the signatures still in place and only the dates changed, a reasonable jury could find that Girma's signature would already have appeared on the purchaser's signature line, and he would have been unable to sign the second contract in the space designated for the purchaser's signature.

Second, a reasonable jury could also find that the signatures on the signature page of the second contract are slightly different from the ones on the first contract.  *Compare id.* at 11 *with id.* at 50.  This is inconsistent with the evidence that the second contract's executed signature page was merely appended from the first contract.

Thus a genuine fact issue exists regarding whether Compass's explanation for the presence of the signatures on the second contract is true.  Because a reasonable jury could find that Compass did execute the second contract, summary judgment cannot be granted.

C

Compass also posits that the second contract is unenforceable because two conditions precedent were not met: (1) Compass did not acquire title to the property at a foreclosure sale, and (2)

Compass's Senior Loan Committee did not approve the sale of the property.[3]

1

"A condition precedent is an event that must happen or be performed before a right can accrue to enforce an obligation." *Centex Corp. v. Dalton*, 840 S.W.2d 952, 956 (Tex. 1992) (citing *Hohenberg Bros. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex. 1976) ("Conditions precedent to an obligation to perform are those acts or events, which occur subsequently to the making of a contract, that must occur before there is a right to immediate performance and before there is a breach of contractual duty." )). Under Texas law, "[a] party seeking to recover under a contract bears the burden of proving that all conditions precedent have been satisfied." *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 283 (Tex. 1998). "As a general rule, expressed conditions must be exactly fulfilled or no liability can arise on the promise which such conditions qualify." *Regent Int'l Hotels, Ltd. v. Las Colinas Hotels Corp.*, 704 S.W.2d 101, 103 (Tex. App. 1985, no writ). But "[w]hen the obligation of a party to a contract depends upon a certain condition's being performed, and the fulfillment of the condition is prevented by the act of the

---

[3]For the purpose of analyzing this ground of Compass's motion, the court construes the facts in the light most favorable to Girma and assumes *arguendo* that Compass and Girma executed the second contract. *See, e.g.*, *Clift*, 210 F.3d at 270.

- 7 -

other party, the condition is considered fulfilled." *Dorsett v. Cross*, 106 S.W.3d 213, 217 (Tex. App. 2003, pet. denied) (citing *Houston County v. Leo L. Landauer & Assocs., Inc.*, 424 S.W.2d 458, 464 (Tex. Civ. App. 1968, writ ref'd n.r.e.)); *see also Miller v. Baum*, 400 F.2d 176, 178 (5th Cir. 1968) ("Under the law of Texas, 'where two parties enter into a contract and consummation of said contract is dependent upon occurrence of a future event, the promissor should do nothing to prevent the occurrence of such future event.'" (quoting *Huckleberry v. Wilson*, 284 S.W.2d 205, 206 (Tex. Civ. App. 1955, writ dism'd w.o.j.))); *cf. Rhodessa Dev. Co. v. Simpson*, 658 S.W.2d 218, 220-21 (Tex. App. 1983, no writ) (holding, where contract to purchase property was contingent on zoning change, purchaser had implied duty to exercise due diligence to obtain zoning change); *Willeford v. Walker*, 499 S.W.2d 190, 192 (Tex. Civ. App. 1973, no writ) (holding, where contract to purchase property was contingent on purchaser's obtaining financing, purchaser had implied duty to apply for loan).

2

The second contract provided: "Purchaser agrees and understands that performance of this Contract of Sale by [Compass] is specifically contingent upon [Compass's] receiving Title to the Subject Property at a foreclosure sale presently posted for a March 1, 2005 sale in Dallas County." D. App. 49. It also stated:

> The Buyer acknowledges that prior to the Closing, the Seller must obtain approval from its Senior Loan Committee. The acceptance of this Contract by the Seller prior to receipt by the Seller of the appropriate approval is subject to the potential rejection of this Contract by the Senior Loan Committee. If this Contract is rejected or not approved by 5:00 PM February 17, 2005, the Contract shall automatically terminate and the Earnest Money shall be returned to the Buyer [and] neither party shall have any further rights or obligations under the Contract.

*Id.* at 53. By their terms, these provisions are conditions precedent to Compass's obligation to sell the property to Girma under the second contract.

The parties do not dispute that Compass did not acquire title to the property at the March 1, 2005 foreclosure sale. Instead, a third party purchased the property for $674,000. It is reasonable to infer from the $674,000 sale price that Compass did not bid a higher amount at the sale. If Compass's own failure to bid up to the $680,000 contract price caused the condition precedent to be unsatisfied, then under Texas law the condition is deemed met. *See Dorsett*, 106 S.W.3d at 217. On the present record, it is unclear whether Compass would have been successful in acquiring title to the property had it bid up to the $680,000 contract price at the foreclosure sale—i.e., the third party may nevertheless have outbid Compass had it bid up to $680,000. Thus a fact issue exists concerning whether Compass's own conduct—its failure to bid up to $680,000—caused the condition precedent to be unsatisfied, thus

precluding summary judgment on this ground.[4]

3

Compass also maintains that the contract is unenforceable because Girma did not meet the condition precedent of Senior Loan Committee approval of the sale of the property to him.  Girma maintains that Compass has failed to present any evidence showing that this condition precedent was not met.

Girma's contention is technically correct.  In support of Compass's position that neither contract was ever approved by its Senior Loan Committee, Compass cites portions of Matise's and Rosenberg's affidavits in which they aver that the Senior Loan Committee did not approve the first contract, but they do not refer explicitly to the second contract.  But the affidavits do state that, on or about February 18, 2005, Compass decided not to sign the second contract.  It is reasonable to infer from these averments that the Senior Loan Committee did not approve the second contract since Compass decided not to go forward with it.  Nevertheless, Compass is not entitled to summary judgment on this

---

[4]In his response brief, Girma contends that Compass should be estopped from denying its obligation to bid up to the outstanding amount due on the note at the foreclosure sale because Matise assured Girma that the bank would do so.  In its reply brief, Compass objects based on the parol evidence rule to the portions of the affidavits of Girma and Awadelkariem in which they aver that Matise assured Girma that Compass would actually obtain title to the property at the foreclosure sale.  Because the court does not reach Girma's estoppel argument and does not rely on these portions of Girma's evidence in deciding the summary judgment motion, the objections are overruled as moot.

basis.

To the extent that Compass's argument about the lack of Senior Loan Committee approval is a necessary corollary of its contention that it did not execute the second contract—i.e., Compass decided not to execute the second contract, so it follows that the Senior Loan Committee never approved the contracted sale—the court has already concluded that there are genuine issues of material fact that preclude summary judgment based on the assertion that Compass did not execute the second contract. And to the extent the condition precedent was unmet because Compass did not submit the second contract to the Senior Loan Committee for approval, there is a genuine fact issue as to whether this condition is deemed satisfied on the basis that Compass prevented its fulfillment. *See Dorsett*, 106 S.W.3d at 217.

Accordingly, the court denies Compass's motion for summary judgment on Girma's breach of contract claim.

III

Compass next moves for summary judgment on Girma's claim for fraud in connection with a real estate transaction, under Tex. Bus. & Com. Code Ann. § 27.01.[5] Girma's § 27.01 claim is based on his

---

[5]Under § 27.01(a), fraud in connection with a real estate transaction consists of a

> (1) false representation of a past or existing material fact, when the false representation is
> (A) made to a person for the purpose of

- 11 -

allegation that, before he executed the first contract, Matise misrepresented to him that, absent someone's bidding the full $1,751,000 outstanding on the note, Compass would obtain title to the property at the foreclosure sale.  Girma alleges that, relying on Matise's misrepresentation, he repaired and improved the property and expended money on brokerage fees, lender finance fees, and environmental studies.

Compass contends it is entitled to summary judgment because § 27.01 requires the existence of an enforceable contract, but the first contract's conditions precedent were not satisfied and the parties never entered into the second contract.  Compass also asserts that Girma disclaimed reliance on Matise's statements.

Addenda to both the first contract and the second contract provide:

---

inducing that person to enter into a contract; and
(B) relied on by that person in entering into that contract; or
(2) false promise to do an act, when the false promise is
(A) material;
(B) made with the intention of not fulfilling it;
(C) made to a person for the purpose of inducing that person to enter into a contract; and
(D) relied on by that person in entering into that contract.

- 12 -

>           The Buyer agrees with and represents,
>           warrants, guarantees and promises to the
>           Seller as follows:
>
>           . . . .
>
>> c) The Buyer has not relied, and is not
>> relying, upon any information, document,
>> sales brochures, or other literature,
>> maps or sketches, projection pro forma,
>> statement representation, guarantee or
>> warranty (whether expressed or implied,
>> oral or written, material or immaterial)
>> that may have been given or made by, or
>> on behalf of the Seller.
>
>           . . . .
>
>> h) The Seller is not liable or bound in
>> any manner by any verbal or written
>> statement, representations or information
>> pertaining to the Property furnished by
>> any broker, agent, employee, servant or
>> other person, unless the same or
>> specifically set forth or referred to in
>> this Contract.

P. App. 19-20; D. App. 14-15.

The court holds that a reasonable jury could only find that, when Compass and Girma entered into the first contract, Girma explicitly disclaimed reliance on Matise's representation, thereby precluding Girma's § 27.01 fraud claim as it relates to the first contract. *See Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 182 (Tex. 1997) (holding that disclaimer of reliance precludes § 27.01 fraud claim).

The parties dispute whether they entered into the second contract. If, at trial, the jury finds that they did, then Girma's disclaimer of reliance in the second contract will preclude his

§ 27.01 fraud claim as it relates to the second contract. *See id.* If the jury finds that the parties did not, then Girma's § 27.01 fraud claim is still precluded because § 27.01 requires the existence of a contract involving a real estate transaction. *See Nolan v. Bettis*, 577 S.W.2d 551, 556 (Tex. Civ. App. 1979, writ ref'd n.r.e.) ("An examination of § 27.01 shows that it is concerned with misrepresentation of material fact made to induce another to enter into a contract for the sale of land or stock. Because there was neither a contract nor a sale of land between the parties involved in this case, § 27.01 is inapplicable."); *see also Evans v. Wilkins*, 2001 WL 1340356, at *3 (Tex. App. Nov. 1, 2001, no pet.) (unpublished opinion) ("Courts have consistently interpreted this requirement strictly, holding that for a fraud in a transaction to be actionable under § 27.01, the contract in question must actually effect the conveyance of real estate between the parties . . . ." (collecting cases)). Thus regardless whether the parties entered into the second contract, Girma cannot prevail on his § 27.01 claim.

Accordingly, the court grants Compass summary judgment dismissing Girma's § 27.01 claim for fraud in connection with a real estate transaction.

IV

The court next addresses Compass's motion for summary judgment on Girma's common law fraud claim. This action is based on the same alleged misrepresentation as is his statutory fraud claim: Matise's averment that Compass would obtain title to the property at the foreclosure sale absent another person's bidding the full $1,751,000 outstanding on the note.

The elements of common law fraud in Texas are

> (1) a material representation was made; (2) it was false when made; (3) the speaker either knew it was false, or made it without knowledge of its truth; (4) the speaker made it with the intent that it should be acted upon; (5) the party acted in reliance; and (6) the party was injured as a result.

*Fluorine On Call, Ltd. v. Fluorogas Ltd.*, 380 F.3d 849, 858 (5th Cir. 2004) (quoting *Coffel v. Stryker Corp.*, 284 F.3d 625, 631 (5th Cir. 2002)). Compass argues that it is entitled to summary judgment because the terms of the second contract preclude Girma's reliance on any misrepresentation, the summary judgment evidence shows that Compass made no misrepresentation to Girma, he cannot prove that any reliance on his part resulted in any damages, and he cannot show that any misrepresentation was made recklessly or with knowledge of its falsity or made in anticipation of reliance on it.

Because Compass will not have the burden at trial on this claim, it can obtain summary judgment by pointing the court to the absence of evidence to support it. *See Celotex Corp. v. Catrett*,

- 15 -

477 U.S. 317, 325 (1986).  If it does, Girma must go beyond his pleadings and designate specific facts showing there is a genuine issue for trial.  *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  Summary judgment is mandatory where the nonmoving party fails to meet this burden.  *Little*, 37 F.3d at 1076.

The court grants Compass summary judgment on Girma's common law fraud claim because Compass has asserted that Girma "cannot show that such misrepresentation was made recklessly or with knowledge of its falsity," D. Br. 20, and Girma has not adduced evidence that would permit a reasonable jury to find that Matise made the misrepresentation with the knowledge of its falsity or without knowledge of its truth.  This failure as to one essential element is sufficient to warrant the entry of summary judgment on the entire claim.  *See, e.g., Edgar v. Gen. Elec. Co.*, 2002 WL 318331, at *4 (N.D. Tex. Feb 27, 2002) (Fitzwater, J.) ("The summary judgment nonmovant's failure to adduce proof as to any essential element of his cause of action renders all other facts immaterial." (citing *Celotex*, 477 U.S. at 323)).

In his response brief, Girma addresses Matise's knowledge of falsity in this conclusory statement, unsupported by any citation to the summary judgment evidence: "There is at the very minimum a material fact issue as to whether or not Matise knew such representation to be false when he made it or, as required by the

- 16 -

law, asserted such a misrepresentation without knowledge of its truth."  P. Br. 4.  Beyond this, Girma does not direct the court to proof that would permit a reasonable jury to find that Matise knew the statement was false.  The court is not required to "sift through the record" in search of a genuine issue of material fact. *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 463 (5th Cir. 1996); *see also* N.D. Tex. Civ. R. 56.5(c) ("A party whose . . . response is accompanied by an appendix must include in its brief citations to each page of the appendix that supports each assertion that the party makes concerning the summary judgment evidence.").  Girma's conclusory assertion, made without any citation to evidence, is insufficient to withstand summary judgment.  *See, e.g., Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002) ("[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate . . . ." (quoting *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc))).  Because Girma has failed to adduce evidence demonstrating the existence of a genuine issue of material fact that Matise knew of the falsity of his representation at the time he made it, or made the representation without knowledge of its truth, Compass is entitled to summary judgment on Girma's common law fraud claim.[6]

---

[6]Compass also posits that it is entitled to summary judgment on both Girma's statutory fraud claim and his common law fraud claim because Girma has not pleaded fraud with the requisite particularity mandated by Rule 9(b).  The court need not reach this argument because it concludes on other grounds that Compass is

V

Compass also contends that it is entitled to summary judgment dismissing Girma's request for exemplary damages and attorney's fees. Because the court has dismissed Girma's tort claims and only an action for breach of contract remains, Compass cannot be held liable for exemplary damages. Because the court has denied summary judgment, however, as to Girma's breach of contract claim, he can recover attorney's fees if he proves his breach of contract action at trial.

\*   \*   \*

Compass's December 30, 2005 motion for summary judgment is granted as to Girma's statutory and common law fraud claims and denied as to his breach of contract claim.

**SO ORDERED.**

May 31, 2006.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

---

entitled to summary judgment on both fraud claims.